UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br>    *Plaintiff*, | No. 3:20-cv-00056 (KAD) |
| v. | |
| ENTERPRISE BUILDERS, INC., HARTFORD SPRINKLER CO., INC., COLLINS & CO., INC.,<br>    *Defendants.* | February 22, 2021 |
| HARTFORD SPRINKLER CO., INC.,<br>    *Cross-Claimant*, | |
| v. | |
| COLLINS & CO., INC., ENTERPRISE BUILDERS, INC.,<br>    *Cross-Defendants*. | |

**MEMORANDUM OF DECISION RE:
CROSS-DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 27, 29)**

Kari A. Dooley, United States District Judge:

    Pending before the Court are the motions of Collins & Co., Inc. ("Collins") and Enterprise Builders, Inc. ("Enterprise," and, collectively, the "Cross-Defendants") to dismiss the cross-claims asserted against them by Defendant-Cross-Claimant Hartford Sprinkler Co., Inc. ("Hartford") sounding in indemnification and contribution pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons that follow, Enterprise's motion to dismiss is GRANTED in part and DENIED in part and Collins's motion to dismiss is DENIED.

1

**Allegations**

This case arises from an incident involving the alleged bursting of a frozen water supply line which led to substantial water damage to an apartment complex located at 75 New London Turnpike, Glastonbury, Connecticut (the "Subject Property") on or around January 23, 2019. Philadelphia Indemnity Insurance Company (the "Plaintiff") became subrogated to the right of its insured, the Center Village Limited Partnership, which owned the Subject Property and maintained property insurance through the Plaintiff at all relevant times. (Compl. ¶ 2, ECF No. 1.) Enterprise was the general contractor for the construction of an apartment complex at the Subject Property. (*Id*. ¶ 9.) Hartford and Collins were subcontracted by Enterprise to install a sprinkler system and insulation, respectively. (*Id*. ¶¶ 10, 12.) According to the Plaintiff, the frozen water supply line that led to the accident at issue was caused by "the improper design, installation, and/or insulation of the sprinkler system." (*Id*. ¶ 14.) The Plaintiff brings negligence claims against Enterprise, Hartford, and Collins, alleging that each failed to exercise reasonable care in their respective roles in, *inter alia*, overseeing and installing the sprinkler system, and safely maintaining the surrounding insulation, so as to protect the sprinkler system and its piping from freezing temperatures.

In its answer to the complaint, Hartford asserts identical cross-claims against Enterprise and Collins for: (1) common law or implied indemnification, and (2) contribution pursuant to Conn. Gen. Stat. § 52-572h. (ECF No. 16.) Enterprise and Collins have each moved to dismiss the cross-claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that this Court lacks subject matter jurisdiction over the statutory contribution claims because they are not ripe for judicial review, and that the indemnification claims fail to state a claim upon which relief may be granted.

**Standards of Review**

    **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (*per curiam*) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[T]his Court has subject matter jurisdiction only over cases that are ripe for adjudication." *Sirob Imports, Inc. v. Peerless Ins. Co.*, 958 F. Supp. 2d 384, 388 (E.D.N.Y. 2013), *aff'd*, 558 F. App'x 32 (2d Cir. 2014) (quotation marks omitted). "Ripeness is peculiarly a question of timing" and the doctrine "'prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it.'" *Ollie v. Univ. of Connecticut*, 364 F. Supp. 3d 143, 148 (D. Conn. 2019) (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013)).

"Ripeness, . . . is a component of Article III standing." *Id.* "A plaintiff can demonstrate standing by establishing three elements: (1) an injury-in-fact; (2) causation; and (3) redressability." *Vullo v. Office of Comptroller of Currency*, 378 F. Supp. 3d 271, 282 (S.D.N.Y. 2019) (citing *Spring Commc'ns Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 273–74 (2008)). "Under the injury-in-fact requirement, 'the first and foremost' element, 'a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016)). "Constitutional ripeness" turns on the first element; "to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not actual or imminent,

3

but instead conjectural or hypothetical." *Ollie*, 364 F. Supp. 3d at 149 (quoting *Nat'l Org. for Marriage*, 714 F.3d at 688).[1]

### Motion to Dismiss for Failure to State a Claim to Relief

On a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's factual allegations as true and must draw inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). The complaint "must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id.* "Rule 12(b) applies equally to claims, counterclaims, cross-claims and third-party claims, and . . . motion[s] to dismiss . . . [cross-claims] are evaluated under these same standards."

---

[1] "Courts have separately developed the related doctrine of 'prudential ripeness' as 'a more flexible doctrine of judicial prudence.'" *Vullo*, 378 F. Supp. 3d at 283 (quoting *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)). "[W]hen a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." *Nat'l Org. for Marriage*, 714 F.3d at 688. "In recent years, the Supreme Court has cast doubt on the 'continuing vitality of the prudential ripeness doctrine,' on th[e] ground that it 'is in some tension with the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging.' . . . But . . . neither the Supreme Court nor the Second Circuit has abandoned the doctrine yet." *New York v. Trump*, No. 20-CV-5770 (RCW) (PWH) (JMF), 2020 WL 5422959, at *24 n.12 (S.D.N.Y. Sept. 10, 2020), *vacated and remanded on other grounds*, 141 S. Ct. 530 (2020) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)).

*Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*, 317 F. Supp. 3d 795, 800 (S.D.N.Y. 2018) (internal citation omitted).

**Discussion**

  **Statutory Contribution Claims**

  "Contribution is a payment made by each, or by any, of several having a common interest or liability of his share in the loss suffered, or in the money necessarily paid by one of the parties [on] behalf of the others." *Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-CV-01600 (MPS), 2018 WL 3998972, at *6 (D. Conn. Aug. 21, 2018) (quoting *Crotta v. Home Depot*, *Inc*., 249 Conn. 634, 639, 732 A.2d 767 (1999)) (emphasis omitted). Under Connecticut law, "[a] right of contribution exists in parties who, pursuant to subsection (g) of this section are required to pay more than their proportionate share of [a] judgment." Conn. Gen. Stat. § 52-572h(h)(1). Subsection (g) referenced therein authorizes the Court to reallocate recoverable economic and noneconomic damages that it determines to be uncollectible from a liable defendant among the other defendants in accord with certain provisions. *See id*. § 52-572h(g)(1)–(4).[2] The Court may do so "[u]pon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later." *Id*. § 52-572h(g)(1). Enterprise and Collins accordingly argue that "a right of contribution arises only after

---

[2] In a case involving multiple tortfeasors, the jury not only determines liability but also assesses "the percentage of negligence that proximately caused the injury, death or damage to property . . . that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property" as well as "the percentage of such negligence attributable to the claimant." Conn. Gen. Stat. § 52-572h(f)(4)–(5). Generally, any tortfeasor found liable is only responsible to pay the "proportionate share" of the Plaintiff's damages assessed against him or her, which is based upon that party's "percentage of negligence." *See id*. § 52-572h(c),(d). The reallocation provision embodied in subsection (g) reflects the legislative intent "that, as between a victim and the negligent defendants, it is the defendants who should bear the risk that a tortfeasor is insolvent." *Babes v. Bennett*, 247 Conn. 256, 271, 721 A.2d 511 (1998).

a judgment has been rendered" and that Hartford's contribution claims are therefore unripe. (Collins Mem. at 12, ECF No. 27-1; Enterprise Mem. at 12, ECF No. 30.)  *See also Associated Constr.*, 2018 WL 3998972, at *7 (D. Conn. Aug. 21, 2018) ("A right of contribution arises only after a judgment has been rendered") (citing *Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 217 Conn. 340, 353, 586 A.2d 567 (1991)).

Collins and Enterprise frame their argument in the language of constitutional ripeness—asserting that "Hartford Sprinkler's claimed injuries are not actual or imminent, but rather conjectural and hypothetical, and dependent on events that may never come to fruition." (Mems. at 13.)  Although not approaching the issue as one of constitutional dimensions, judges of the Connecticut Superior Court have granted motions to strike on this basis, recognizing that "asserting a claim for contribution prior to judgment is premature because there has been neither a determination of the proportionate share of damages, nor has [the cross-claimant] made any payment in excess of her proportionate share of the plaintiff's claim." *Gladding v. Saren*, No. CV97327219S, 1997 WL 746401, at *5 (Conn. Super. Ct. Nov. 21, 1997); *see also, e.g.*, *Simon v. My Bread Baking Co.*, No. CV 980165440, 1999 WL 966614, at *1 (Conn. Super. Ct. Oct. 14, 1999) ("Since this case has not reached a final judgment, the third-party plaintiffs have not stated a legally sufficient cause of action for contribution at this time").  Enterprise also cites *Associated Constr.*, 2018 WL 3998972, at *7, where the district court raised *sua sponte* the issue of whether the cross-claimants' claims for contribution were unripe in the absence of final judgment in the underlying case, citing *Gladding*, 1997 WL 746401, at *5, and *Simon*, 1999 WL 966614, at *1.  The court subsequently granted summary judgment to the cross-defendant on this basis after the cross-claimants failed to respond to an order to show cause.  *See* Order, *Associated Constr. / AP*

*Constr., LLC v. Hanover Ins. Co. et al*, No. 3:15-CV-01600 (MPS), ECF No. 204 (D. Conn. Sept. 5, 2018).

In response, Hartford cites the Court to *Pouliot v. Paul Arpin Van Lines, Inc.*, 303 F. Supp. 2d 135, 138 (D. Conn. 2004) ("*Pouliot I*"), in which the district court denied a motion to dismiss on this basis, reasoning that "[s]o long as this court applies Connecticut law regarding contribution when it fashions a judgment, then there is no harm in permitting [the cross-claimant] to raise its claim now for consideration at the appropriate stage of the proceeding." In *Pouliot I*, after determining that the question was one of federal procedural law, the court found that because the Second Circuit has recognized that Fed. R. Civ. P. 14(a) "permits impleader of a party on a not-yet-accrued contribution claim as a 'contingent' claim," it perceived no reason why that reasoning would not apply equally to Fed. R. Civ. P. 13(g), which "permits cross-claims against any party 'whom it is asserted is or *may* be liable to the cross-claimant.'" *Id*. (citing *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994)).

Having considered these divergent outcomes, the Court agrees that under the *Erie* doctrine, Federal Rule of Civil Procedure 13 displaces any conflicting rule that would render such claims premature in the Superior Court. *See Com/Tech Commc'n Techs., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 150–51 (2d Cir. 1998) (*per curiam*) (vacating decision of district court that deemed counterclaim deficient under New York procedural law, as "where the matter in question is one governed by the Federal Rules of Civil Procedure, it is settled that the Federal Rule applies regardless of contrary state law.") (internal quotation marks and ellipsis omitted). The Court also agrees that the contingent nature of the language of Rule 13(g), insofar as it mirrors that of Rule 14(a), warrants a determination that a contribution claim may be pled at this stage even though it

7

"is purely inchoate—i.e., has not yet accrued under the governing substantive law."[3] *Andrulonis*, 26 F.3d at 1233; *see also Luyster v. Textron, Inc.*, 266 F.R.D. 54, 63 (S.D.N.Y. 2010) ("Both Rules 13(g) and 14(a) avoid the delay of a subsequent judgment by allowing a defending party to bring as part of the same action a claim against one who 'is or may be liable' to it for all or part of a claim asserted against it. . . . This allows a contingent claim for contribution or indemnity, . . . to be brought as part of the original action, rather than requiring that it be brought as a separate claim once mature."). Indeed, as Wright and Miller explain:

> [U]nlike Rule 13(a), the crossclaim provision does not require that the claim be mature at the time of pleading. On the contrary, subdivision (g) specifically provides that a crossclaim can be brought if the party against whom it is asserted 'is or may be liable to the crossclaimant for all or part' of plaintiff's claim. The use of the words 'may be' exactly parallels the language of Rule 14(a), so that as is true of third-party claims, a crossclaim can be contingent upon the ultimate adjudication of the crossclaimant's liability to plaintiff.

6 Charles Allan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1431 (3d ed.) (footnotes omitted); *see also Dennler v. Dodge Transfer Corp.*, 201 F. Supp. 431, 439–40 (D. Conn. 1962) (explaining that "[o]rdinarily, a joint obligor may not maintain an action for contribution or indemnification until he has paid more than his share of the judgment," but that "under Rule 13(g) of the Federal Rules of Civil Procedure, . . . a claim may be asserted against a party who is or may be liable to the cross-claimant" which means that "[i]n certain cases rule 13(g) has the effect of accelerating the accrual of a right," though "the rule may not be used to enlarge substantive rights and the cross-claimant must have a valid claim under state law against his co-party") (footnote omitted); *accord Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 805–06, 811 (2d Cir.

---

[3] Federal Rule of Civil Procedure 13(g) provides in full: "A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim *that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant.*" (emphasis added). Federal Rule of Civil Procedure 14(a)(1) provides in relevant part: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it.*" (emphasis added).

1979) (noting that "Rule 13(g) specifically sanctions claims between coparties for contribution and indemnity such as those asserted by Empire," which "sought indemnification and contribution from [the cross-defendants] in the event that Empire incurred any liability").

The Court is accordingly unpersuaded that Hartford's cross-claims for contribution are precluded by Fed. R. Civ. P. 13(g), or that this Court lack subject matter jurisdiction over those claims, given that Rule 13 expressly contemplates contingent claims.  *Cf. Pall v. KPMG, LLP*, No. 3:03-CV-00842 (AWT), 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006) (dismissing contribution claim as unripe where it depended upon a finding of liability in separate legal actions, and distinguishing from cases in which courts have permitted "contribution claims made by third-party defendants or third-party plaintiffs who are joined in the action in which liability will be determined").  Here, Hartford is joined in the underlying action and permitting its cross-claims comports with "the general policy behind allowing cross-claims [which] is to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps."  *Luyster*, 266 F.R.D. at 63 (quoting 6 Wright et al., *Fed. Prac. & Proc*. § 1431).

Finally, the Court notes that the indemnification claims, which Collins and Enterprise do not claim are unripe, are also contingent claims.  *See id*.  Hartford, Collins, and Enterprise would first have to be found liable to Plaintiff before any indemnification claim would accrue, an event which may never come to pass.  Although a contribution claim has additional contingencies, the Court discerns no principled basis to allow some contingencies, but find that others, by number or nature, strip this Court of subject matter jurisdiction.  The motions to dismiss the cross-claims for contribution are accordingly DENIED.

**Common Law Indemnification Claims**

Collins and Enterprise next argue for dismissal of Hartford's indemnification cross-claims, which assert that the Plaintiff's alleged damages "were caused in whole or in part by the actions or failures to act on the part of [Enterprise and Collins, respectively], its agents, servants and/or employees, and not by any conduct on the part of Hartford Sprinkler." (Cross Claims ¶¶ 13, 18.)

"Ordinarily there is no right of indemnity or contribution between joint tortfeasors." *Pellecchia v. Connecticut Light & Power Co.*, 147 Conn. App. 650, 655, 83 A.3d 717 (App. Ct. 2014) (quoting *Skuzinski v. Bouchard Fuels, Inc*., 240 Conn. 694, 697, 694 A.2d 788 (1997)). "Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong," the Connecticut Supreme Court has recognized indemnification as a means of "shift[ing] the impact of liability from passive joint tortfeasors to active ones." *Id*. at 655–56 (quoting *Skuzinski*, 240 Conn. at 697). In these circumstances a plaintiff must allege and ultimately prove four elements to recover under a common law theory of indemnification:

> (1) that the other tortfeasor was negligent; (2) that his negligence, rather than the plaintiff's, was the direct, immediate cause of the accident and injuries; (3) that he was in control of the situation to the exclusion of the plaintiff; and (4) that the plaintiff did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent.

*Id*. at 656 (quoting *Kyrtatas v. Stop & Shop, Inc*., 205 Conn. 694, 698, 535 A.2d 357 (1988)). "The Connecticut Supreme Court has stated that 'it is plausible to define exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident.'" *Pouliot v. Paul Arpin Van Lines, Inc.*, 367 F. Supp. 2d 267, 271 (D. Conn. 2005) ("*Pouliot II*") (quoting *Skuzinski*, 240 Conn. at 706). "'While the question of exclusive control is ordinarily a

10

question of fact to be determined by a jury,' a claim may be dismissed as a matter of law where the allegations, evaluated against the backdrop of the plaintiff's complaint, 'could not result in a jury finding that the third-party defendants were in exclusive control over the situation.'" *Wade v. Kay Jewelers, Inc.*, No. 3:17-CV-990 (MPS), 2018 WL 4440532, at *12 (D. Conn. Sept. 17, 2018) (quoting *Pennsylvania Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield, CT*, No. 3:11-CV-650 (VLB), 2012 WL 3779140, at *5 (D. Conn. Aug. 30, 2012)).

Enterprise and Collins principally argue that Hartford has failed to state a claim for common law or implied indemnification because it has not pled, and could not plead, that either Enterprise or Collins were in exclusive control of the dangerous condition giving rise to the accident, which they describe as the allegedly faulty design, installation, insulation and maintenance of the sprinkler system. Preliminarily, Enterprise and Collins have improperly conflated the allegations of negligence with the determination of "the situation." *See Gugliotti v. Naugatuck Valley Lawn Maint.*, No. UWYCV146025695S, 2016 WL 1444203, at *7 (Conn. Super. Ct. Mar. 23, 2016) ("Being 'in control of the situation' has been interpreted to mean control over the dangerous condition that exposed a plaintiff to harm by virtue of alleged negligent conduct as opposed to control over the negligent conduct itself") (citing *Pellechia*, 139 Conn. App. at 775); *see also McAuliffe v. Costello Indus., Inc.*, No. CV156056652S, 2016 WL 6603568, at *4 (Conn. Super. Ct. Oct. 6, 2016) (defining raised storm drain culvert near intersection of plaintiff's car accident as the relevant "situation" for purposes of indemnification claim as opposed to the plaintiff's alleged negligent driving, as the plaintiff's alleged negligence "merely exposed the decedent to the dangerous condition"). Here, the "dangerous condition giving rise to the accident" was the sprinkler line that froze and burst. The question then is whether Hartford has or could establish that Enterprise or Collins was in exclusive control of the sprinkler line, even if Hartford

is found liable to the Plaintiff.  When evaluating the legal sufficiency of a cross-claim or third party claim seeking indemnification, it is appropriate to look to the underlying complaint's allegations, as "it is the grounds alleged in the original complaint that will be the basis for holding [Hartford] liable to the Plaintiff in the first instance." *Pennsylvania Mfrs. Indem. Co.*, 2012 WL 3779140, at *5; *see also Cimino v. Yale Univ.*, 638 F. Supp. 952, 958 (D. Conn. 1986) ("The cross-claim must be construed against the background of the complaint").

Citing the allegations in the underlying complaint, Enterprise argues that "[t]here is no conceivable manner in which Enterprise was in exclusive control of [the] situation that led to the plaintiff's alleged damages, i.e. an alleged water supply line for a sprinkler system that allegedly froze and burst, when Enterprise retained Hartford Sprinkler to design, install, inspect, test and maintain the subject sprinkler system."[4]  (Enterprise Mem. at 16–17.)  According to Enterprise "[t]his is true even if plaintiff can prove . . . that Enterprise had some alleged oversight and supervisory responsibility for the system installation." (*Id*. at 17.)  In response, Hartford side steps this argument and cites to the Plaintiff's allegations that it was improperly installed cellulose insulation which caused the sprinkler line to freeze and that Enterprise negligently supervised, and failed to ensure adequate safety protocols were followed in, the insulation of the sprinkler system. (Hartford Mem. at 7–8, ECF No. 35 (citing Compl. ¶¶ 9, 12–14, 21).)  Thus, Hartford submits, the improper insulation is the "situation" and it therefore follows that Enterprise could have been in control of the situation to the exclusion of Hartford, as Enterprise was responsible for overseeing the insulation of the sprinkler system and Hartford is not alleged to have performed any insulation work.  (*Id*. at 8–9.)

---

[4] Although having elsewhere defined the "situation" to encompass the plaintiff's allegations of negligence, in advancing this argument, in the Court's view, Enterprise accurately identifies the "situation" as being the sprinkler line that froze and burst.

Hartford has also improperly conflated the allegations of negligence with the determination of the "dangerous condition giving rise to the accident" or "the situation." While a jury could find that the faulty insulation was a proximate cause of the accident, and might even absolve Hartford of any liability, that is a separate inquiry from control over the "dangerous condition," which, in this case, is the sprinkler line that froze and burst. Here, addressing the question that must be answered, the Court agrees with Enterprise that if the Plaintiff succeeds in establishing Hartford's negligence in the design, installation, or maintenance of the sprinkler system, as alleged in the complaint, it is wholly implausible that Enterprise could be deemed to have been in control of the sprinkler line to the exclusion of Hartford merely by overseeing Hartford's work. *See United Illuminating Co. v. Whiting-Turner Contracting Co.*, No. 3:18-CV-00327 (WWE), 2019 WL 2348191, at *3 (D. Conn. June 3, 2019) (granting motion to dismiss indemnification claim asserted by subcontractor Cherry Hill Construction Co. against Independent Materials Testing Laboratories Inc. ("IMTL"), which Cherry Hill hired to inspect its work, as "[i]t is simply not plausible that IMTL was in control *to the exclusion of Cherry Hill* of the site work that Cherry Hill itself performed"); *Michael Horton Assocs., Inc. v. Calabrese & Kuncas, P.C.*, No. NNHCV106011979, 2012 WL 1089964, at *4 (Conn. Super. Ct. Mar. 8, 2012) (granting motion to strike indemnification claim and agreeing with defendants "that a structural engineering firm (the defendants) that *reviews* structural plans cannot be said to have exercised a greater degree of control over those plans and their later use in a construction project than the structural engineering firm (the plaintiff) that actually *prepared* the plans"). Enterprise's motion to dismiss the claim for indemnification is therefore GRANTED.

The analysis with respect to Collins warrants a different outcome. While Enterprise's alleged supervisory role over the work that Hartford and/or Collins are alleged to have performed

13

defeats Hartford's ability to establish that Enterprise was in control of the sprinkler line to Hartford's exclusion, the underlying complaint does not foreclose such a finding as between Hartford and Collins.  To the contrary, the broad allegations pled preclude an unequivocal conclusion of law at this stage—leaving open the alternate possibilities that either Hartford or Collins may have been in exclusive control of the sprinkler line, or, on the other hand, that neither entity was in exclusive control.  (*See* Compl. ¶¶ 11–13 (alleging that "Hartford installed a water-supply line within a vacant space in the ceiling over a hallway closet that was adjacent to an outside doorway," that "Enterprise retained Collins to install insulation in the subject property, including over the water-supply lines for the sprinkler system," and that two types of insulation were ultimately installed).)  Here, whether or not Collins could have been in exclusive control of the sprinkler line which ultimately froze and burst cannot be definitively ascertained from the face of the complaint and will instead likely turn on questions of fact to be decided by the jury.  *See A & G Contracting, Inc. v. Design/Build Collaborative, LLC*, No. CV106008755, 2012 WL 4377775, at \*3 (Conn. Super. Ct. Aug. 23, 2012) (finding that "genuine issue of material fact involving control of the roofing project" precluded entry of summary judgment on indemnification claim brought by one subcontractor against another subcontractor it hired to install a roof that was allegedly deficient, where both issues of control as well as causation were contested).  The motion to dismiss as to Collins is accordingly DENIED.

     Finally, Enterprise and Collins challenge Hartford's failure to plead the third and fourth elements of an indemnification claim, and Hartford has responded by requesting leave to amend its cross-claims to address these deficiencies.  (*See* Proposed Am. Answer and Cross-Compl., Hartford Ex. A, ECF Nos. 34-1, 35-1.)  Because the proposed amendment would not cure the deficiencies with respect to the indemnification claim against Enterprise, the motion for leave to

amend is DENIED as to Enterprise but GRANTED as to the cross-claim against Collins. Hartford shall file its amended pleading on or before **March 4, 2021.**

**Conclusion**

For the foregoing reasons, Enterprise's motion to dismiss is granted in part and denied in part and Collins's motion to dismiss is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of February 2021.

                        */s/ Kari A. Dooley*

                        KARI A. DOOLEY
                        UNITED STATES DISTRICT JUDGE